FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 27, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SARA G.,[1] <br>                Plaintiff, <br><br>    vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY,[2] <br>              Defendant. | No. 1:19-cv-03104-MKD <br><br> ORDER DENYING PLAINTIFF'S <br> MOTION FOR SUMMARY <br> JUDGMENT AND GRANTING <br> DEFENDANT'S MOTION FOR <br> SUMMARY JUDGMENT <br><br> ECF Nos. 16, 21 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 16, 21. The parties consented to proceed before a magistrate judge. ECF No. 9. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 16, and grants Defendant's motion, ECF No. 21.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §
423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to
determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §
404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's
work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in
"substantial gainful activity," the Commissioner must find that the claimant is not
disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis
proceeds to step two. At this step, the Commissioner considers the severity of the
claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers
from "any impairment or combination of impairments which significantly limits
[his or her] physical or mental ability to do basic work activities," the analysis
proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment
does not satisfy this severity threshold, however, the Commissioner must find that
the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to
severe impairments recognized by the Commissioner to be so severe as to preclude
a person from engaging in substantial gainful activity. 20 C.F.R. §
404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the

ORDER - 4

enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On February 16, 2016, Plaintiff applied for Title II disability insurance benefits alleging a disability onset date of July 1, 2013. Tr. 49, 144-50. The application was denied initially and on reconsideration. Tr. 74-80, 82-87. Plaintiff appeared before an administrative law judge (ALJ) on October 4, 2017. Tr. 33-48. On April 13, 2018, the ALJ denied Plaintiff's claim. Tr. 14-32.

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of July 1, 2013, through her date last insured of December 31, 2014. Tr. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, bilateral knee osteoarthritis, and status-post right hip

ORDER - 6

replacement surgery (2008). Tr. 19. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 22. The ALJ then concluded that Plaintiff had the RFC to perform a full range of light work. Tr. 22.

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work. Tr. 26. Alternatively, the ALJ determined that if Plaintiff was limited to performing sedentary work, or light work with the additional restriction of standing and walking for a total of four hours per day, she was also capable of performing her past work, which was performed at the sedentary level of exertion. Tr. 26. The ALJ noted that, according to the Dictionary of Occupational Titles, the accounting clerk occupation did not require any postural movements or exposure to extreme cold, hazards, or vibrations, and therefore, if the ALJ had adopted the RFC assessed by the DDS consultants, Plaintiff would not be precluded from performing her past relevant work. Tr. 26. Thus, the ALJ noted, if he had adopted the RFC assessed by the DDS consultants, Plaintiff would not be precluded from performing her past relevant work. Tr. 26. Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of July 1, 2013, though her date last insured of December 31, 2014. Tr. 26.

On March 22, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ fulfilled his duty to fully and fairly develop the record;

2. Whether the ALJ conducted a proper step-two analysis;

3. Whether the ALJ properly evaluated Plaintiff's symptom claims;

4. Whether the ALJ properly evaluated lay witness evidence; and

5. Whether the ALJ conducted a proper step-four analysis.

ECF No. 16 at 2, 10-11, 13-14.

## DISCUSSION

### A. Duty to Develop the Record

Plaintiff contends the ALJ erred by failing to fully and fairly develop the record. ECF No. 16 at 4-7. The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where, as here, the claimant is represented by counsel. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.

ORDER - 8

2001); *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996).  "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'"  *See Tonapetyan*, 242 F.3d at 1150 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).

Plaintiff faults the ALJ for failing to obtain either consultative examinations or medical expert testimony regarding Plaintiff's functional capacity prior to her date last insured.  ECF No. 16 at 4.  The duty to develop the record is triggered if the evidence is ambiguous or the record is inadequate to make a decision.  *Tonapetyan*, 242 F.3d at 1150.  Here, there is no evidence to suggest the record was ambiguous.  Further, the ALJ did not find that the record was inadequate to make a decision.  Plaintiff contends that a consultative examination, or retrospective medical expert testimony, could have provided "the crucial medical analysis necessary" to properly assess her functioning prior to her date last insured based on objective evidence which showed the severity of her right knee impairment prior to that date was "likely very near to surgically limited."  ECF No. 16 at 6-7; *see* Tr. 433 (November 30, 2015: when Plaintiff underwent surgery for her right knee, there was extensive cartilage thinning and fraying between Outerbridge grade-II and -III).  Plaintiff also argues that objective medical evidence showed her spinal condition was a significant impairment prior to her

date last insured.  ECF No. 16 at 6; s*ee* Tr. 439 (October 20, 2015: imaging of

Plaintiff's spine showed severe degenerative disc disease and severe neural

foraminal narrowing).  However, the ALJ evaluated the record as a whole and did

not find it inadequate to make a decision.  Rather, the ALJ noted that the most

significant findings and treatment in the record were made well after Plaintiff's

date last insured, including Plaintiff's back surgery in April 2016.  Tr. 24.  The

ALJ found that this evidence did not reasonably relate back to the time period in

question, and concluded that "the relatively benign findings in the record prior to

[Plaintiff's] date last insured" showed her impairments were not as limiting as she

alleged.  Tr. 23-24; *see, e.g.,* Tr. 226 (August 26, 2013: no gait disturbances were

observed); Tr. 268 (September 6, 2013: Plaintiff reported walking two miles every

morning for exercise); Tr. 348 (August 27, 2014: an x-ray of Plaintiff's left knee

was normal); Tr. 350-51 (September 17, 2014: Plaintiff sought treatment for left

knee pain; she reported her symptoms worsened after falling in April 2014 and

included pain while ascending and descending stairs and while sleeping; an

examination showed antalgic gait, tenderness, and limited and painful range of

motion in her left knee, normal bilateral lower extremity strength, and normal left

knee inspection with no muscle atrophy; Plaintiff retained full and pain-free range

of motion in her bilateral hips, bilateral ankles, and right knee); Tr. 354 (October

30, 2014: an MRI of Plaintiff's left knee showed moderate cartilage loss and joint

ORDER - 10

effusion with loose bodies); Tr. 305, 357 (December 15, 2014: Plaintiff underwent left knee surgery, and a postsurgical examination found grossly intact motor and sensory functioning and acceptable range of motion). Based on this record, the ALJ did not err.

**B.    Step Two**

Plaintiff contends the ALJ erred by failing to identify Plaintiff's psychological, spinal, and bilateral hip conditions as severe impairments at step two. ECF No. 16 at 7-14. At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 404.1521. An impairment is non-severe if "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…." Social Security Ruling (SSR) 85-28 at *3. Therefore, an impairment is non-severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities, such as walking, standing, sitting, lifting, pushing, pulling, reaching,

ORDER - 11

carrying, or handling, seeing, hearing, and speaking, understanding, carrying out, and remembering simple instructions, using judgment, responding appropriately to supervision, coworkers, and usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. § 404.1522; SSR 85-28 at *3.

Step two is "a de minimus screening device [used] to dispose of groundless claims."  *Smolen*, 80 F.3d at 1290.  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ concluded that Plaintiff's obesity, bilateral knee osteoarthritis, and status-post right hip replacement surgery (2008) were severe impairments.  Tr. 19.  The ALJ also concluded that Plaintiff had the following non-severe impairments: degenerative disc disease, gastrointestinal symptoms, and anxiety and depressive disorders.  Tr. 20-22.  After detailing the medical evidence pertaining to these impairments, the ALJ concluded these impairments did not more than minimally impact Plaintiff's ability to perform basic work activities.  Tr. 20-22.

First, Plaintiff argues the ALJ erred by failing to find that her anxiety and depressive disorders were severe impairments prior to her date last insured.  ECF

No. 16 at 8-11 (citing Tr. 20-22, 25). The ALJ determined the record showed

Plaintiff's mental health symptoms did not cause more than minimal functional

limitations and required only scant treatment prior to her date last insured. Tr. 20-

21; *see, e.g.,* Tr. 228, 231-32 (July 18, 2013: at a mental health intake assessment,

Plaintiff reported no mental health treatment history[3]; Plaintiff gave full eye

contact, showed intact memory and fund of knowledge, was fully oriented, and

was appropriately dressed and groomed; Plaintiff was able to care for herself and a

young daughter during the time period at issue); Tr. 223-24, 226 (August 26, 2013:

Plaintiff endorsed longstanding depression and PTSD, but she did not allege that

her symptoms were exacerbated by an assault in March 2013; she reported

attending college classes and four to five support meetings per week; a mental

_____

[3] Plaintiff contends the ALJ improperly found that her July 2013 intake assessment

indicated she had no mental health treatment history, Tr. 231, which was contrary

to her testimony. ECF No. 9-10 (citing Tr. 21). Plaintiff argues this intake

treatment note stated Plaintiff had undergone mental health screening several times

before. ECF No. 16 at 9-10 (citing Tr. 228-32). However, Plaintiff reported she

had been in outpatient mental health treatment in 2010 but did not follow through.

Tr. 224. A treatment note from August 26, 2013 reported that Plaintiff had not had

any regular therapy "until now." Tr. 224.

ORDER - 13

status examination showed Plaintiff was cooperative and spontaneous with intact memory and cognition, but had blunted and tense affect and fleeting eye contact); Tr. 268-69 (September 6, 2013: Plaintiff reported medications improved her symptoms; she presented with a "good" mood and she was pleasant with appropriate affect, had normal speech, showed intact memory and cognition, and fair insight and judgment); Tr. 263 (September 17, 2013: Plaintiff presented with a "good" mood, she was pleasant and cooperative with appropriate affect and appropriate eye contact, she maintained appropriate attention, was oriented, had normal speech, showed intact memory and cognition, and fair insight and judgment); Tr. 253 (October 21, 2013: Plaintiff presented with depressed mood but was pleasant and cooperative with appropriate affect and appropriate eye contact, she maintained appropriate attention, was fully oriented, had normal speech, showed intact memory, cognition, and fund of knowledge); Tr. 284 (November 12, 2013: Plaintiff was discharged from mental health treatment for failure to engage).

Plaintiff, who bears the burden of proving severity and harmful error, has identified no evidence indicating that her mental health conditions more than minimally impacted her ability to perform basic work activities. Instead, Plaintiff asserts the ALJ erred by importing step three considerations into the step two assessment by discussing the four functional areas of understanding, remembering, or applying information, interacting with others, concentrating, persisting, or

maintaining pace, and adapting or managing oneself.  ECF No. 16 at 8 (citing Tr. 21-22).  However, in determining whether a claimant has a medically severe impairment or combination of impairments at step two of the disability determination, an ALJ is bound by 20 C.F.R. § 404.1520a.  *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011).  Under 20 C.F.R. § 404.1520a, the ALJ is required to perform a "special psychiatric review technique," "rate the degree of functional limitation for four functional areas," "determine the severity of the mental impairment (in part based on the degree of functional limitation), … and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder." *Id.* (citing 20 C.F.R. § 404.1520a, (b), (c), (c)(1), (c)(2)).  The ALJ did not err by evaluating these four functional areas at step two of the disability determination.

Plaintiff also contends that later in the decision, the ALJ misstated the findings of the nonexamining psychological consultants by stating that they determined Plaintiff's mental disorders were non-severe prior to her date last insured, but instead, these consultants determined the evidence was insufficient to fully evaluate Plaintiff's claim.  ECF No. 16 at 9 (citing Tr. 25, 54, 64).  Despite Plaintiff's contention that this constituted an error in the step two analysis, the ALJ did not discuss the findings of the nonexamining psychological consultants in the context of the step two analysis.  Tr. 20-22.  Further, although the nonexamining

psychological consultants determined the evidence in Plaintiff's file was not sufficient to fully evaluate Plaintiff's claim, they also found the evidence needed could not be obtained, and Plaintiff's "condition was not disabling on any date through [Plaintiff's date last insured]." Plaintiff has not shown error in the ALJ's step two analysis based on the ALJ's findings related to the nonexamining psychological consultants.

Finally, Plaintiff argues that the ALJ listed "a few negative findings while wholly ignoring" other findings from the record. ECF No. 16 at 10; *see* Tr. 232 (July 18, 2013: Plaintiff presented at her mental health assessment as depressed and guarded, and she used a soft voice); Tr. 278 (July 22, 2013: Plaintiff presented at her first therapy appointment after intake as visibly distressed and tearful, and unable to clearly articulate her issues beyond problems with attention and concentration); Tr. 276 (August 8, 2013: Plaintiff was stressed and angry); Tr. 226 (August 26, 2013: Plaintiff had mild latency in her speech, had fleeting eye contact, was tense, and had a sad and blunted affect). Plaintiff also argues the ALJ ignored that Plaintiff had been complaining therapy was not helping, she found it hard to trust people, and she continued to get psychiatric medications through primary providers who continued to increase and change her doses. ECF No. 16 at 10 (citing Tr. 252, 291, 301). A mere recitation of providers' observations or mental status examination findings does not demonstrate how Plaintiff's

depression and anxiety symptoms impacted her ability to engage in basic work activities. On this record, the ALJ did not err by finding that Plaintiff's psychological conditions were non-severe impairments.

Next, Plaintiff argues the ALJ erred by failing to find that her degenerative disc disease was a severe impairment prior to her date last insured. ECF No. 16 at 13-14. The ALJ determined that the record showed no reports of low back pain symptoms, no treatment for low back pain symptoms, and no objective examination findings consistent with her allegations prior to Plaintiff's date last insured. Tr. 20. Plaintiff argues that the ALJ incorrectly found there was no workup on her low back prior to her date last insured. ECF No. 16 at 13 (citing Tr. 20). Instead, Plaintiff asserts that an x-ray of her lumbar spine from September 2015 indicated it was being compared to an image from August 2011, Tr. 440, Plaintiff reported in January 2016 that her back pain had been ongoing for five years, Tr. 504, and she reported that her back pain began around the time her child was born in 2010, Tr. 225, 842. ECF No. 16 at 13. Plaintiff also contends the ALJ acknowledged that within nine months of her date last insured, objective evidence of her lumbar spine revealed severe degenerative disc disease and severe neural foraminal narrowing, bilateral pars defect, and atrophy of the left iliopsoas musculature. ECF No. 16 at 13 (citing Tr. 20, 439). However, Plaintiff has identified no evidence indicating that her spinal condition more than minimally

impacted her ability to perform basic work activities before her date last insured.

Thus, Plaintiff has not demonstrated that the ALJ erred.

Finally, Plaintiff contends the ALJ erred by failing to find that her bilateral hip condition was a severe impairment prior to her date last insured, and instead incorrectly identified post-surgical replacement of the wrong hip as a severe impairment. ECF No. 16 at 11. The ALJ found Plaintiff's status-post right hip replacement surgery (2008) to be a severe impairment, but this was incorrect, as Plaintiff had surgery on her left hip. Tr. 19; ECF No. 16 at 11-12. Plaintiff argues that this was not harmless error because the record firmly established that Plaintiff had impairments in both hips, not just the left hip that had been surgically replaced. ECF No. 16 at 12. Plaintiff asserts that by incorrectly finding the right hip was post-operative, the ALJ failed to properly assess whether the new development in her right hip met the *de minimis* standard at step two. ECF No. 16 at 12. Plaintiff argues that in April 2014, her right hip hurt as much as her left hip that had been replaced. ECF No. 16 at 11 (citing Tr. 293). However, she cites her own reports rather than the objective evidence that the ALJ considered. ECF No. 16 at 11. An x-ray of her right hip discussed at the same appointment cited by Plaintiff was "within normal limits," and while Plaintiff "insist[ed] that the pain is similar to the pain she had prior to her left hip replacement," she did not have pain with palpation, or any pain in the sacroiliac joint or her low back. Tr. 293, 295.

Further, the ALJ noted that upon examination in September 2014, Plaintiff had

active and passive full and pain-free range of motion in both hips.  Tr. 24 (citing

Tr. 350-51).  While Plaintiff asserts the record firmly established she had

impairments in both hips and not just the left hip that had been surgically replaced,

Plaintiff points only to evidence of her subjective complaints to providers.  To

show a severe impairment, the claimant must first prove the existence of a physical

or mental impairment by providing medical evidence consisting of signs,

symptoms, and laboratory findings; the claimant's own statement of symptoms

alone will not suffice.  20 C.F.R. § 404.1521.  Plaintiff has failed to show that she

had a severe bilateral hip condition prior to her date last insured.  Therefore,

Plaintiff has failed to show any harm in the ALJ's error in identifying the wrong

hip as being surgically replaced in 2008.  An error is harmless "where it is

inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115

(quotation and citation omitted).

Plaintiff, who bears the burden of proving severity and harmful error, has

identified no evidence indicating that these conditions more than minimally

impacted her ability to perform basic work activities.  A mere recitation of medical

diagnoses does not demonstrate how each of the conditions impacts Plaintiff's

ability to engage in basic work activities.  Thus, Plaintiff has not demonstrated that

the ALJ erred.  Moreover, Plaintiff's contention lacks merit.  As Plaintiff was

found to have severe impairments, this case was not resolved at step two. If there was any error in the ALJ's finding at step two, it is harmless as all impairments, both severe and non-severe, were considered in the determination of Plaintiff's residual functional capacity.[4] *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Plaintiff makes no showing that any of the conditions mentioned create limitations not already accounted for in the RFC. *See Shinseki*, 556 U.S. at 409-10 (the party challenging the ALJ's decision bears the burden of showing harm). There was no error in the step two analysis and Plaintiff is not entitled to remand on these grounds.

## C.    Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting her symptom claims. ECF No. 16 at 14-20. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. Social Security Ruling (SSR) 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain

_____

[4] The ALJ stated, "any non-severe impairment has been considered when assessing [Plaintiff's] abilities and limitations, and the residual functional capacity stated below reflects that analysis." Tr. 20.

ORDER - 20

or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th 1996); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could possibly produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 23.

    1. *Inconsistent with Medical Evidence*

The ALJ found that Plaintiff's symptom allegations were not consistent with the medical evidence. Tr. 23-24. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991).

However, the medical evidence is a relevant factor in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ found that the medical evidence was not consistent with Plaintiff's allegations of severe physical limitations. Tr. 23. The ALJ noted that Plaintiff reported she was unable to work because chronic pain limited her ability to stand or sit, she was unable to sit for more than 30 minutes at a time before having to get up and move around, she could only do household chores for about 10 to 15 minutes at a time, she spent about four to five hours per day lying down, and she only got about two or three hours of sleep per night. Tr. 23. The ALJ acknowledged that Plaintiff's examination findings, reports to providers, and providers' observations indicated her left knee impairment caused some functional limitations, but determined that the evidence failed to establish the extreme limitations alleged by Plaintiff. Tr. 23-24; *see, e.g.,* Tr. 226 (August 26, 2013: no gait disturbances were observed); Tr. 268 (September 6, 2013: Plaintiff reported walking two miles every morning for exercise); Tr. 348 (August 27, 2014: an x-ray of Plaintiff's left knee was normal); Tr. 350-51 (September 17, 2014: Plaintiff sought treatment for left knee pain; she reported her symptoms worsened after falling in April 2014 and included pain while ascending and descending stairs and while sleeping; an examination showed antalgic gait, tenderness, and limited and

painful range of motion in her left knee, normal bilateral lower extremity strength, and normal left knee inspection with no muscle atrophy; Plaintiff retained full and pain-free range of motion in her bilateral hips, bilateral ankles, and right knee); Tr. 354 (October 30, 2014: an MRI of Plaintiff's left knee showed moderate cartilage loss and joint effusion with loose bodies); Tr. 305, 357 (December 15, 2014: Plaintiff underwent left knee surgery, and a postsurgical examination found grossly intact motor and sensory functioning and acceptable range of motion). The ALJ also observed that Plaintiff did not report to any provider that her symptoms forced her to lie down for several hours per day prior to her date last insured. Tr. 23-24. Moreover, the ALJ determined that although records subsequent to Plaintiff's date last insured suggested that some worsening of her condition had occurred and showed that she had surgical treatment of her impairments, these findings did not objectively establish the presence of a disabling impairment before Plaintiff's date last insured. Tr. 24; *see* Tr. 465 (December 15, 2014: left knee surgery); Tr. 433, 512 (November 30, 2015: right knee surgery); Tr. 813-16 (April 25, 2016: back surgery). Further, the ALJ observed that the record did not include any medical opinions assessing disabling limitations. Tr. 25.

Plaintiff challenges the ALJ's conclusion by offering evidence that Plaintiff argues supports her symptom claims. ECF No. 16 at 16-17; *see, e.g.,* Tr. 293-95 (April 24, 2014: Sarah Garrison, ARNP, noted Plaintiff had previously presented

with right hip pain, she already had a prescription for Tramadol that needed to be refilled, and during this visit Plaintiff requested treatment for her knee pain); Tr. 298 (August 27, 2014: Plaintiff saw Amy Turner, PA-C, for worsening chronic left knee pain); Tr. 350 (September 17, 2014: Plaintiff told her orthopedist at their first meeting that she had decreased mobility, joint tenderness, limping and locking, popping and swelling, and things were made worse by climbing stairs); Tr. 295, 298, 350-51, 355 (April 24, 2014, August 27, 2014, September 17, 2014, November 4, 2014: prior to left knee surgery, Plaintiff was distressed, had decreased strength in the right lower extremity, swelling and crepitation in her left knee, pain and decreased left knee range-of-motion, bilateral absent patellar reflexes, positive McMurray's findings on the left, and an antalgic gait); Tr. 304 (November 21, 2014: Plaintiff was morbidly obese during this time period, with a body mass index of 44.2); Tr. 305 (December 15, 2014: during left knee surgery, extensive synovitis was found throughout the suprapatellar pouch, medial gutters, and anterior compartment; Plaintiff had very thin cartilage on the medial side with nearly full-thickness erosion down to the bone on the weightbearing side; and she had grade III arthrosis of the patella); Tr. 358 (December 22, 2014: after left knee surgery, Plaintiff reported sharp pains radiating to her foot, increased pain, and numbness and tingling); Tr. 313, 315 (January 16 and 23, 2015: Plaintiff reported feeling very discouraged about her left knee outcome, her right knee was

worrisome with swelling and pain, and she had decreased range of motion in both ankles); Tr. 332-33 (May 14, 2015: months after her left knee surgery, physical therapy treatment notes reported decreased left leg strength and a gait favoring the left side, shooting pains, and numbness); Tr. 422-23 (October 20, 2015: a CT scan of Plaintiff's lumbar spine showed severe degeneration with severe neural foraminal stenosis); Tr. 433 (November 30, 2015: right knee surgery showed extensive cartilage thinning and fraying). Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill*, 698 F.3d at 1158. Here, the ALJ's conclusion remains supported by substantial evidence despite the additional evidence identified by Plaintiff, some of which is from after Plaintiff's date last insured. Because the ALJ's finding is based on a rational interpretation of the evidence, the Court defers to the ALJ's interpretation. Based on this record, the ALJ reasonably concluded that Plaintiff's subjective symptom testimony was not supported by the medical evidence. Tr. 23-24.

### 2. Inconsistent with Activities

The ALJ found that Plaintiff's activities were inconsistent with the level of impairment Plaintiff alleged. Tr. 24. An ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can

spend a substantial part of the day engaged in pursuits involving the performance of exertional or nonexertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ indicated that Plaintiff reported she was unable to work due to physical impairments that caused extreme and debilitating limitations, including the need to lie down throughout the day, significant interference with sleep, severe limitations of sitting and mobility, and the inability to engage in activities for more than 15 minutes at a time. Tr. 23; *see, e.g.,* Tr. 38 (Plaintiff testified she could not sit for more than 30 minutes before she had to get up and move around, and she could only do chores at home for about 10-15 minutes at a time due to her pain); Tr. 41-42 (Plaintiff testified that during the relevant time period, she spent about four to five hours per day lying down due to her chronic pain); Tr. 41-42 (Plaintiff testified that between pain and gastrointestinal symptoms, she spent up to seven hours per day lying down or using the restroom). However, the ALJ noted that

Plaintiff engaged in activities that were incompatible with her alleged extreme limitations in sitting, standing, walking, and the inability to engage in activities for more than 15 minutes at a time. Tr. 24. The ALJ observed that Plaintiff reported she was attending community college in August 2013, and she walked two miles each morning for exercise in September 2013. Tr. 24 (citing Tr. 223, 268). The ALJ reasonably concluded that these activities were inconsistent with the debilitating level of impairment Plaintiff alleged. Tr. 24.

Plaintiff challenges the ALJ's finding by asserting that there was no inherent inconsistency between Plaintiff's testimony and her attempt to go back to school and exercise. ECF No. 16 at 19. An ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities that "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. Here, the ALJ identified Plaintiff's specific alleged impairments and noted specific activities that indicated Plaintiff was less limited than she alleged. Tr. 23-24. This was a clear and convincing reason to give less weight to Plaintiff's subjective symptom testimony.

### 3. Failure to Report Symptoms to Treatment Providers

The ALJ found that Plaintiff's symptom testimony was inconsistent with Plaintiff's failure to report similar symptoms to her treatment providers. Tr. 23-24. In evaluating a claimant's symptom claims, an ALJ may consider the consistency

of an individual's own statements made in connection with the disability review process with any other existing statements or conduct made under other circumstances.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Thomas*, 278 F.3d at 958-59.  Additionally, "[t]he failure to report symptoms to treatment providers is a legitimate consideration in determining the credibility of those complaints."  *Lesher v. Comm'r of Soc. Sec.*, No. 2:15-cv-00237-SMJ, 2018 WL 314819, at *6 (E.D. Wash. Jan. 5, 2018) (citing *Greger v. Barnhart*, 464 F.3d 972, 972 (9th Cir. 2006)).

Here, the ALJ noted that despite Plaintiff's allegations made during her administrative hearing that her impairments caused significant interference with sleep, Plaintiff did not report this symptom to her providers.  Tr. 23; *compare* Tr. 42 (Plaintiff testified that she was only able to sleep for two to three hours per night and was exhausted) *with* Tr. 268 (Plaintiff reported sleeping well, six hours per night, in September 2013).  Further, the ALJ observed that although Plaintiff testified that her impairments required her to lie down throughout the day, she did not tell any provider that her symptoms forced her to lie down for several hours per day prior to her date last insured.  Tr. 23-24; *see* Tr. 41-42 (Plaintiff testified that during the relevant time period, she spent about four to five hours per day lying down due to her chronic pain); Tr. 41-42 (Plaintiff testified that between pain and gastrointestinal symptoms, she spent up to seven hours per day lying down or

using the restroom). The ALJ reasonably concluded, based on this record, that Plaintiff's symptom allegations in connection with her claim were inconsistent with her reporting to her treatment providers. This was a clear and convincing reason, supported by substantial evidence, to discount her symptom complaints.

### 4. Reasons for Stopping Work

The ALJ found that Plaintiff's symptom complaints were less reliable because she stopped working for reasons other than her impairments and provided inconsistent statements regarding why her work ended. Tr. 25. An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in making a credibility determination. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Further, in evaluating a claimant's symptom claims, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284.

Here, the ALJ noted that Plaintiff reported to the Social Security Administration that she stopped working due to her medical conditions. Tr. 25 (citing Tr. 161). However, the ALJ also observed that Plaintiff testified she stopped working because she was laid off. Tr. 25, 42-43. The record shows that Plaintiff consistently reported she was laid off because her inability to concentrate

ORDER - 30

was affecting her job performance, and thus, she stopped working for reasons related to some of her asserted impairments. *See, e.g.,* Tr. 228, 231 (July 18, 2013: Plaintiff reported that she was "let go" from two jobs because of all the mistakes she made on the job due to her inability to focus or concentrate); Tr. 278 (July 22, 2013: Plaintiff reported that she lost a job that she had for eight years because of her inability to concentrate); Tr. 225 (August 26, 2013: Plaintiff reported losing two long term jobs "due to inability to focus and concentrate"). The ALJ's determination that Plaintiff stopped work for reasons unrelated to her impairments, and that she provided conflicting statements about her reasons for stopping work, are not supported by substantial evidence.

This error is harmless because the ALJ identified other specific, clear, and convincing reasons to discount Plaintiff's symptom claims. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

### D.    Lay Opinion Evidence

Plaintiff challenges the ALJ's rejection of the lay witness statements of her daughter's father, Danny Wagner, her friend, Crystal Zumwalt, and her mother, Beverly Days.  ECF No. 16 at 20-21.  An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness.  *Molina*, 674 F.3d at 1114; *see Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because the ALJ provided clear and convincing reasons for rejecting the claimant's own subjective complaints, and because the lay witness's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness's testimony).  The ALJ may reject lay opinion testimony that essentially reproduces the claimant's discredited testimony.  *See Valentine*, 574 F.3d at 694.

Here, Plaintiff argues the ALJ improperly rejected the lay witness statements because the reasons given for rejecting Plaintiff's testimony were not valid.  ECF No. 16 at 21.  The ALJ considered undated statements from Mr. Wagner, Ms. Zumwalt, and Ms. Days and assigned little weight to their statements because their observations were similar to Plaintiff's allegations which, as discussed *supra*, were

inconsistent with the objective findings in the record, observations of treatment providers, and Plaintiff's reported activities. Tr. 25-26 (citing Tr. 217-21). Mr. Wagner reported he had known Plaintiff for eight years, she struggled to do household chores and play with their daughter, and it was hard for her to even walk through the grocery store. Tr. 217-18. Ms. Zumwalt reported there were some days when Plaintiff could not leave her home due to gastrointestinal issues, her mobility was limited, and she needed help with her daughter and with chores. Tr. 219-20. Ms. Days reported she saw Plaintiff several times per week, Plaintiff received help from Mr. Wagner, she spent most of her time at home due to gastrointestinal issues, she had difficulty being in public due to anxiety and depression, and some days were unbearable with a combination of joint and spinal pain. Tr. 221. Plaintiff testified that she had severe gastrointestinal issues that caused her to spend a lot of time in the bathroom from early morning to the afternoon, she would spend about six or seven hours out of an eight-hour period during the day laying down or reclining due to gastrointestinal issues and arthritis pain, she was not able to do any of the chores at home, she could not stand for more than 10 to 15 minutes before she had to sit down, and chronic pain made her extremely tired on a daily basis. Tr. 38, 41-42. As discussed *supra*, the ALJ properly rejected Plaintiff's symptom testimony for clear and convincing reasons. The ALJ accurately found that the lay opinions of Mr. Wagner, Ms. Zumwalt, and

Ms. Days reflected allegations similar to those made by Plaintiff. Because these statements are similar to Plaintiff's symptom testimony, and the ALJ properly discredited Plaintiff's symptom testimony for clear and convincing reasons, the ALJ needed only point to the same reasons to discredit these lay statements. *Molina*, 674 F.3d at 1114; *Valentine*, 574 F.3d at 694. The ALJ did not err in rejecting the lay opinions of Mr. Wagner, Ms. Zumwalt, and Ms. Days.

### E. Step Four

Plaintiff contends the ALJ erred at step four because the ALJ relied upon an RFC and hypothetical that failed to include all of Plaintiff's limitations. ECF No. 16 at 11-14.[5] However, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence. *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005) ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."). The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions

---

[5] Plaintiff did not list a Step Four challenge in the statement of issues, ECF No. 16 at 2, but appears to present such a challenge in the brief, ECF No. 16 at 11-14.

ORDER - 34

of the particular claimant. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219,

1228 (9th Cir. 2009). "If an ALJ's hypothetical does not reflect all of the

claimant's limitations, then the expert's testimony has no evidentiary value to

support a finding that the claimant can perform jobs in the national economy." *Id*.

However, the ALJ "is free to accept or reject restrictions in a hypothetical question

that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968,

973 (9th Cir. 2006).

Plaintiff asserts that the ALJ erred by failing to include any nonexertional

limitations in her RFC, and by failing to consider her spinal and bilateral hip

impairments when formulating her RFC. ECF No. 16 at 11-14. Plaintiff's

argument is based entirely on the assumption that the ALJ erred in discrediting her

symptom allegations, evaluating her impairments at step two, and failing to fulfil

the ALJ's duty to develop the record. *See Stubbs-Danielson v. Astrue*, 539 F.3d

1169, 1175 (9th Cir. 2008) (challenge to ALJ's step five findings was unavailing

where it "simply restates [claimant's] argument that the ALJ's RFC finding did not

account for all her limitations"). For reasons discussed throughout this decision,

the ALJ's adverse findings in his consideration of Plaintiff's symptom allegations

and evaluation of Plaintiff's severe impairments, as well as any duty that he had to

fully and fairly develop the record, are legally sufficient and supported by

substantial evidence. Thus, the ALJ did not err in assessing the RFC, and he posed

a hypothetical to the vocational expert that incorporated all of the limitations in the

ALJ's RFC determination, to which the expert responded that Plaintiff could

perform her past relevant work as an accounting clerk.[6]  Tr. 44-45.  The ALJ

properly relied upon this testimony to support the step four determination.

Therefore, the ALJ's step four determination that Plaintiff was not disabled within

_____

[6] The ALJ alternatively found that if Plaintiff was limited to performing sedentary

work, or light work with the additional restriction of standing and walking for a

total of four hours per day, she was also capable of performing her past work,

which was performed at the sedentary level of exertion.  Tr. 26, 44.  The ALJ

noted that, according to the Dictionary of Occupational Titles, the accounting clerk

occupation did not require any postural movements or exposure to extreme cold,

hazards, or vibrations, and therefore, if the ALJ had adopted the RFC assessed by

the DDS consultants, Plaintiff would not be precluded from performing her past

relevant work.  Tr. 26.  Thus, the ALJ noted, if he had adopted the RFC assessed

by the DDS consultants, Plaintiff would not be precluded from performing her past

relevant work.  Tr. 26.

the meaning of the Social Security Act was proper and supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED February 27, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE